Good morning, Your Honors. Please, the Court, merrily marshal on behalf of Mr. Garcia. This case is a case where we just have to look at the humanity of the jurors. It's not really a legalistic argument that I could make. It's a question of putting myself in the place of a juror. And if I heard that this person was callous and indifferent to the fact that he'd taken a human life, I would feel very differently about him than I would if I had not heard that remark. Most of us who have been around a while have talked to people that have killed. We've lived through wars, and we've talked to people that killed during wartime. Some of us have even talked to police officers. Nobody feels good about taking a human life, no matter how justified they might be. Why is the statement, even assuming the worst about all of this, why couldn't the statement just be reasonably heard as, I had to do it because it was either him or me? That's what he said. I had to do it. That's perfectly consistent with the defense's theory of the case, that this was self-defense. If somebody had asked him point blank, you know, why did you do it, and he said, I had to, you know, in his own voice, if he said, I had to, it was him or me, it would have been a lot different than hearing from his best friend that he had no remorse, that he showed no remorse, that he laid in bed at night thinking he was going to do something to him, and that he just had, just... Let's go to the ineffective assistance here. That all goes to the prejudice. Yes, Your Honor, that's true. But as to the ineffective assistance itself, the lawyer actually did originally make a relevance objection to the entire transcript. Yes. So she made the objection. Well, the objection was actually sort of a silly objection to object to the relevance. It was coming in... Well, whether it was silly or not silly, she objected to it. She didn't point out for the court what portions needed to be redacted. The court would have redacted it. I mean, things like evidence code 352 were never raised. And then she made the objection afterwards. After the jury had already heard it, she made it again. And the court said, well, they've already heard it, so he thought he was going to fix it somewhat. This part I don't understand. She wanted some stuff to come in about how there were drug deals, and he had said no. And my understanding was that once she objected to this, he said, well, all right, I'll let that other stuff come in that I wasn't going to let come in. I don't understand why she wanted that. But he thought it was connected up somehow and that it was going to cure a problem here. Well, the fact that it's a perfect example of why good trial attorneys do trial briefs and 402 motions ahead of time and don't wait until the last minute to articulate problems with tapes. But he would have had to have listened to the tape or read the transcript. It was confusing because the defense wanted in, if they were going to play the tape at all, which I think they would have been happy enough to do without, but he wanted in the fact that the victim was supposedly a gangster who was trying to tax my client for selling marijuana in his area. And the prosecution didn't want that in unless my client testified that that's why he was afraid of him. There's a big dialogue where people are talking in incomplete sentences and it gets confusing. So the reason why she wanted it in is because it made more credible that he was afraid of the victim? Yes. He was allegedly a gangster, or at least my client believed he was a gangster. And that was somewhat corroborated by the prosecution's witness that he was selling marijuana. So it was connected to the now challenged thing because it supported the notion that it was him or me, essentially. Yes, it did. But it just came out. The way that it came out in the tape was so callous and so like... I mean, no one who had any decent human emotions would have said it that way. And we don't know that he did say it that way. This is how it was repeated to a person that was given immunity that was trying to ingratiate themselves. And also, you know, if he did say it, he was like 18 years old and there's a bravado between teenage boys that causes them to say things in ways that they really don't mean as we've become aware over the years. So unless the court has more questions, I would save some time for rebuttal. Well, so another question is... I mean, an obvious question is what do we do with EDPA under your area? Well, we've got a summary denial, which we assume is on the merits because this was not raised on direct appeal. But this is my problem. This is maybe the most nuanced IAC claim I've ever seen or one of them, meaning she did object to the whole thing coming in. She did object after the fact. So the problem is that she didn't object beforehand specifically enough even though her objection did encompass this. Well, it was kind of half-hearted and too late. I think that's why I wrote it up as time... Well, too early or too late. Both too early and too late, you're saying. Yeah, too little and too late. Early and too late. Because she objected to the relevance of the whole thing, which included this. But it was, yes, but the whole thing wasn't irrelevant. I mean, because there were some inconsistent statements in there about who reached for the waistband first. So the problem is that at the beginning she didn't say, particularly because of this or specifically because of this paragraph, and that afterwards she could have... If she had asked for a limiting instruction and he had given it, that would have been the end of the matter, right? Would anything really have been different? You couldn't unring that bell, especially the part that he was afraid of. Except we have all kinds of case law, which I don't think is all that sensible before we have it. The question is that who shot Oscar wasn't in doubt. That was not in question. And this statement seems to confirm his own theory that he thought that Oscar was reaching for his waistband, that he had a gun and he had to shoot him. Sure, but, you know, you still feel bad about it. Well, I didn't feel bad about it, Counsel, but I'm trying to figure out what the prejudice is here, even assuming that a mistake has been made by the lawyer. What is the prejudice when it confirms their own theory of the case? Well, that's what the district judge found. There wasn't a question that there was ISD so much that there was no prejudice. But on the other hand, you look at it this way. You've got a man who shot somebody, and he should feel bad about it, whether or not he had to do it or not. He shouldn't say, ah, he had it coming, him or me. I mean, what he could have said, it was him or me, but the way it was put over to the jury in somebody else's voice was not like that. So you can't just take the words out of context. You have to take the way it was presented to the jury through his best, supposedly best friend's mouth about something he might or might not have even said. Okay. Thank you. You can say your job. Thank you. Good morning, Your Honors. May it please the Court, Kathy Pomerantz on behalf of the warden. Counsel wasn't ineffective here because he did object twice to this challenged statement, and he reasonably relied on the trial court's earlier ruling that sustained his objection, and the record also shows. I was trying to find that in the record. What was the earlier ruling, and what was sustained? It is confusing because there's nothing in the reporter's transcript, but in the clerk's transcript at page 123, there was a pretrial evidentiary hearing pursuant to 402 that was held, and Mr. Ramirez testified at that hearing. So it's our opinion that that's when this original objection was made and then was sustained by the trial court. Objection. The objection that this information should not have come in. Where is that in the record? This particular paragraph or the entire transcript? I think just this particular paragraph because you can tell by the way. I don't remember that. Where would we find that in the record? That would be in the clerk's transcript. It was page 123, and it's the minute order. Unfortunately, it doesn't give a great deal of information, but it does show that a pretrial evidentiary hearing was held. Mr. Ramirez did testify. So it's not a transcript. Unfortunately, there was not a transcript included, and this issue wasn't raised on appeal. So it, for whatever reason, didn't make it into the record, unfortunately. Thank you. So what happens at this hearing is defense counsel objects. The trial court sustains that objection. And I believe it occurred about a week before Mr. Ramirez testified. The focus on this particular paragraph? I'm sorry? Focus on this particular paragraph. I believe so because when he makes his second objection, first of all, he seems completely surprised, and he's like, wait a second here. I already objected to this. I objected to this transcript. This wasn't supposed to come in. The whole transcript. He did object to the entire transcript. I don't believe he objected to the entire transcript. I believe that he was objecting to that portion of the transcript. At the first hearing or in the trial? In the trial. So after Mr. Ramirez takes the stand and counsel is working under the belief that, well, the trial court has sustained my objection to this statement that Mr. Ramirez made. So he has every reason to believe that prosecutors are going to adhere to the trial court's sustaining of his objection. The other thing was defense counsel noted that he said was, I objected to this transcript, and this thing began to enter. It's the same stuff going on before an objection was made. He objected to that, and I objected to that whole transcript. Page 201 says, I'm objecting to that being played. I either want all of the recording or none of the recording. Well, and I believe when he's saying that, he's referring to the redacted part of the transcript that the prosecutor wanted to play. He's saying I want none of the recording if you're not going to put this in, and he said he wasn't going to put it in. I think he was okay with the whole recording coming in until the last part before this redacted portion was going to happen. Didn't he have some authenticity issue right out of the gate on the voice that Mr. Ramirez had to testify that it was really him? Yeah. I mean, he made a foundational argument, and the tape was played, and Mr. Ramirez identified. But when he makes the objection, I objected to this transcript and this thing being entered into. And then he says there was an opinion given by this gentleman, the court sustained it, and now he sneaks it in by a transcript. What's interesting is if you also look at page 206 of the excerpts of record, we get a little more of an explanation, and we find out that defense counsel had been told the day before that the tape was going to stop at 10 minutes and 41 seconds, which I believe is where the redacted portion was going to start. How do we figure that out? I mean, at this point they're fighting over two things, actually. They're fighting over the statements made by Ramirez about the remorse, and they're also kind of going back and forth about this redacted portion that the prosecutor didn't want to bring in until after Petitioner had testified. So this redacted portion had to do with Ramirez saying, like, Ramirez indicating that he knew that Oscar was having some run-ins, and he said, you know, this whole thing was all about dope. So that redacted portion, which the prosecutor took out because he didn't want to play it until the end of Petitioner's testimony, was what they were going back and forth on. So I believe where defense counsel says on page 206, this tape was going to stop at 10.41, which would be right before the redacted portion would have come in, and then these challenge statements came after that. So defense counsel, again, so he's relying not only on the court having sustained his objection earlier, he's also relying on a representation by the prosecutor that, I'm going to stop this at 10.41, which means everything after that, which includes these objectionable statements, allegedly objectionable statements that were made, were not going to come in. And so counsel could not have been deficient for reasonably relying on the trial court sustaining of his objection. And he was surprised, and he was upset, and he could not believe that this came in, and he says he's sneaking this in by transcript. So it seems very obvious that this wasn't never supposed to come in, and for whatever reason, by mistake or misfortune, it did come in, and he was surprised to see that. It was handed a transcript the second the tape started playing. He's probably leafing through it as the— But he thought either the transcript or the tape the night before, the day before, right, the transcript, I guess. Petitioner says in his reply brief that he was given the tapes, and I don't have anything in the record that shows that defense counsel was ever given the tapes. And, in fact, he makes a statement about, yeah, well, you gave me the written transcript, but I didn't know what this tape was going to play. So in his mind, again, he's relying— If he didn't have the tapes, he couldn't have known that stopping it at 10 minutes or whatever was— Well, I guess the prosecutor said, I showed him on the unredacted transcript what I was taking out. So I don't know if he said to him, like, at around 10 minutes and 41 seconds into the tape, this is where I'm going to take all the information out about this portion that they wanted, that the prosecutor wanted redacted to remain until after Petitioner had testified. So, again, I mean, under AEDPA and under a reasonable standard here, I mean, the California Supreme Court could certainly have reasonably found that defense counsel acted reasonably in this situation. He objected twice. He had no idea this information was coming in. He relied on the trial court sustaining of his objection. And then he also relied on the prosecutor saying, here's where it's going to stop. I suggest if the court wants to look at the transcripts, and there was a lot of issues with the transcript, but if you look at the first one that was entered and the last one, Exhibit 31 and Exhibit 39, if you look at it, you'll see where the redacted portion doesn't appear in 31, and then it does appear in 39. And I can give you the page sites. But you can see that that's where that redacted portion was going to start, and that is where counsel said, prosecutor said he was going to stop that tape. Let me just give you those page sites. Well, this is a strange argument. Well, because you guys have completely different stories about what happened. Well, I have to say after more thorough looking at the record in preparation for this case, and I spent a lot of time with my colleagues, and we really tried to piece it together. This version you're now telling us was not in your briefs, was it? It wasn't, no. But, of course, oral argument is we're not supposed to bring up the same thing, correct? And in terms of the fact that the core of her complaint, as I understand it, is that he did have the transcript and he didn't read it. You're saying he didn't have it. He may have had it, but I think he was reasonably relying on that sustaining of his objection. I'm not finding the record any indication that he did have it. I don't have any indication in the record that he had the tapes. Tapes before that. Yeah, I don't think he ever had the tapes. I think he had a redacted. But did he have the transcript that was going to be introduced, the second transcript? He had the first transcript. But her representation is that he was actually given it the night before and he didn't look at it. Well, I don't believe that he didn't look at it. I think he relied on the fact that his objection to this material was sustained and that the prosecutor indicated, I'm stopping it here. And the stuff that we're now complaining about comes after that period. It comes after that redacted portion. It's confusing, I understand. And as far as the prejudice prong, I mean, you know, he said he had no remorse. And, again, as Justice Gliby pointed out, if it's him or me, I'm not going to feel bad about it. I thought this guy was going to blow me away. So I don't feel bad that I got to him before he got to me. And I think you have to look at the context of that statement as well. He's talking to his buddy. He's talking to his friend. Is he going to tell his friend, oh, yeah, you know, I feel really bad? You know, these are two young men. He also says he was afraid of him and he didn't go to sleep at night and so on. I mean, I think that that was sort of belied by the record. You know, he said he didn't go to sleep at night, but at the same time he said, you know, I never saw Petitioner with a gun. He left the gun back in Los Angeles. And defense counsel on cross-examination showed Ramirez some pictures from Mexico and he said, do you look scared there? He said, no, I don't look scared there. I mean, I think it helped Ramirez's story when he came back and told the police his version of it, because this is somebody who's clearly involved in this crime in some way. He helped to try to destroy evidence. So I'm sure in Ramirez's mind he's trying to paint a picture to the police, like I'm so innocent here. I just went along with Petitioner. I was scared of him. I didn't know what to do, and on and on. And so I think, you know, here's somebody who's looking for immunity, basically. And so I think you have to take all of those statements with a grain of salt. Okay. We're out of time. Thank you, Your Honors. So it would be helpful to hear your version of events, i.e., was there an earlier objection pre-trial to this particular paragraph? Unfortunately, I was not the attorney that did the direct appeal on this, but I found no indication. What I found is on page 205 where the prosecutor represents an open court, which I have no reason to disbelieve in, that he gave defense counsel a whole transcript the day before. Meaning the equivalent of 39. Yeah. Well, excuse me for saying yes. And the excerpts that I made, I put all three versions in there. I saw that. Right. Yeah, so the court can see that. But what about, as I understand what the prosecutor is now saying, what the government is saying, is that this particular paragraph was subjected to, whether on the tape or the transcript, I'm not sure, pre-trial. There's absolutely no evidence of that. And the objection was sustained. There's absolutely no evidence of that in the record. Well, there's some reference by the defense lawyer about having made a prior objection at the trial. He references this. Right. But we don't know what prior means. I mean, it probably meant, you know, it could well have meant the day before. But indications he's surprised by it, and he doesn't know what's in the transcript, or you could take it that he just doesn't know what's in the tape. But he had an unredacted tape, so any reasonable attorney would have gone through and X'd out things that he thought shouldn't come in and gone to the judge and said, look, these things shouldn't come in and this is why. I just wanted to make – I do agree with counsel on one point. There's no evidence that there were ever any tapes transferred to the defense, which is why neither of us would provide them for this court. That's a defense lawyer who ever got the tapes. The actual tapes, because in the beginning, I wasn't able to get anything from him, but the tapes were not there. I just want to make one point on the prejudice aspect, because that's how the courts have pretty much dealt with it on prejudice. I see it being almost given. The reason why it was so terrible for my client not to feel bad is because by then they would have listened to the news, and it turned out that the man that he thought had a gun really just had a cell phone in his right hand. So he would have known that he made a mistake. If they had listened to the news. Well, yeah, but it's a matter of months, and they're wanted in L.A. They're in Mexico. Well, yeah. Not exactly like this is something that these guys would have been likely to do, be checking out on CNN. Well, they stayed in the Los Angeles area and in San Diego for quite a few days before they actually left to Mexico, and even so. Okay, thank you. Got radios down there too. It would be helpful, to me at least, if each of you would submit a letter with record sites to your now version of what happened with regard to objections or lack thereof. Both of us? Right, particularly the government, because as you said, none of this was in the briefs. Thank you. Okay. Okay, we will go to Luther v. Berryhill.
judges: Berzon, Bybee, Gleason